IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

TERESA P.,

          **Plaintiff,**

v.                                    Civil Action 1:22-cv-397
                                      Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF**
**SOCIAL SECURITY,**

          **Defendant.**

## OPINION AND ORDER

Plaintiff, Theresa P., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 8) and **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on November 27, 2019, alleging disability beginning April 5, 2016, due to fibromyalgia, osteoporosis, osteoarthritis, depression, and migraines. (R. at 175–88, 207). After her applications were denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on March 2, 2021. (R. at 35–58). The ALJ denied benefits in a written decision on May 6, 2021. (R. at 12–34). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on July 7, 2022 (Doc. 1), and the Commissioner filed the administrative record on August 29, 2022 (Doc. 7). The matter has been briefed and is ripe for consideration. (Docs. 8, 10, 11).

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing as follows:

> At the hearing, [Plaintiff] testified that she is unable to work due to a variety of ailments. Among other things, she reported very limited retained exertional ability secondary to fibromyalgia, spine disorders, and disorders of the left shoulder. She further alleged chronic fatigue, and limited exertional ability. As for treatment, [Plaintiff] reported using exercise, hot/cold compresses, massage, hot showers, and ice, preferring to avoid the use of pain medication as much as possible.
>
> As for daily activities, [Plaintiff] described a sedentary lifestyle spent mostly sitting and reading her Bible. She explained that her son and his girlfriend live with her, and assist with some household tasks. She reported the ability to prepare meals, perform household chores, and grocery shopping. She said that she attends church every Sunday and sings in the choir.
>
> As for work related activities, [Plaintiff] reported limited exertional ability, including an inability to stand or walk for any extended periods due to pain, discomfort. She reported significant problems using her hands and arms, and her testimony suggests a number of postural difficulties. She described deficits in memory, stating she has difficulty remembering dates and times, and cannot remember things that happened just a few days before. She denied any deficits in her ability to focus or pay attention.

(R. at 26).

### B. Relevant Medical Evidence

The ALJ summarized the medical records as to Plaintiff's symtoms as follows:

> The record documents a work[-]related injury to the shoulder occurring on February 8, 2016 (Exhibit 4F/95). On March 25, 2016, [Plaintiff] saw George Shybut, MD on March 25, 2016, having been referred by Dr. Ackerly reviewed MRI findings (Id.). [Plaintiff] endorsed decreased range of motion, pain and muscle spasms (Id.). [Plaintiff] was already in physical therapy at the time of this visit (Id.). She stated that physical therapy was helpful, but that she continue[s] to experience symptoms (Id.). Dr. Shybut noted some reduced range of motion in the left shoulder, and assessed long head biceps tendinitis and rotator cuff tendinitis as well as

impingement of the shoulder (Id./97-98). After discussing a number of treatment options, [Plaintiff] opted for physical therapy and steroid injections (Id./98).

MRI Imaging of the left shoulder from March of 2016 revealed mild long head biceps tenosynovitis, supraspinatus [tendinosis], Infraspinatus tendinosis, suggestion of intermediate intrasubstance signal in the superior aspect of the distal subscapularis tendon fibers, possibly reflecting tendinosis, and minimal left acromioclavicular degenerative changes (Exhibit 4F/165).

Physical therapy notes recount the details of the accident, noting that [Plaintiff] was holding a cart for delivery when a 300-pound object was pushed onto her cart; causing the cart to tip and shoving [Plaintiff] backwards (Exhibit 4F/107). [Plaintiff] reportedly she experienced pain in her neck and back (Id.). The physical therapist indicated [Plaintiff]'s prognosis was good, and recommended a course of therapy including neuromuscular re-education, instruction in a home exercise program and manual therapy (Id./109).

At a follow up in April of 2016, [Plaintiff] endorsed continued pain of 5/10. Dr. Shybut prescribed an extended steroid taper and continued physical therapy (Exhibit 4F/88). The record documents a lengthy course of physical therapy (See e.g., Exhibit 4F/72, 92,) and continued conservative treatment, including steroid injections (Exhibit 4F/71-72). Later imaging taken on September 19, 2016 documented a tiny articular surface tearing of the infraspinatus tendon, and mild intraarticular long head biceps tendinopathy (Exhibit 4F/160).

In November, 2016, [Plaintiff] was referred to Dr. Heis, who documented that [Plaintiff] had full strength in the left arm and shoulder, but still displayed some range of motion loss and tenderness to palpation (Exhibit 2F/14). Dr. Heis treated [Plaintiff] with trigger point injections with instructions to follow up in one month (Id.).

[Plaintiff] has a diagnosis for fibromyalgia (Exhibit 1F/52). *** In this case, [Plaintiff]'s physician has diagnosed [Plaintiff] with fibromyalgia, with the proper tender point findings (Exhibit 1F/52).

MRI imaging of the cervical spine in October of 2017 revealed an unremarkable cervical spine MRI with no evidence of significant discogenic disease (Exhibit 1F/34-35).

*** [I]in January of 2019 [Plaintiff] saw her primary care provider with complaints of back pain (Exhibit 9F/38). Objective findings on examination noted some decreased range of motion in the cervical and thoracic spine, but no neurological deficits, normal strength, and normal reflexes (Id./43). Dr. Ashworth assessed fibromyalgia and chronic back pain, and referred [Plaintiff] to a spinal surgeon (Id./44).

3

> [Plaintiff] was seen at Wellington Orthopedic in February 2019 complaining of neck and bilateral arm pain (Exhibit 3F/3). At this visit, [Plaintiff] endorsed the onset of neck and bilateral arm pain 3 weeks prior to this visit, when she picked up her grandchild and felt a "pop" in her neck (Id.). She denied any weakness in her arms or any difficulty with fine motor skills (Id.). Physical findings noted some reduced range of motion in the neck, but no obvious muscle spasm (Id./4). She was also noted to have 5/5 strength 2+ reflexes in the upper extremities, with intact sensation to light touch from C6-C8 and tenderness to palpation over the bilateral traps (Id.). Imaging reviewed at this visit revealed mild cervical spondylosis with no sign of acute fracture (Id.). PA-C Lauren Bishnnow diagnosed cervical strain and after discussing treatment modalities with [Plaintiff], prescribed a course of physical therapy (Id./5).
>
> Later treatment notes continue to document generally unremarkable findings and conservative treatment. For example, [Plaintiff] was seen by Dr. Heis on August 27, 2020 (Exhibit 7F/2).
>
> Dr. Heis noted he had seen [Plaintiff] 2 years prior for shoulder issues, but [Plaintiff] told Dr. Heis that her shoulder issues had resolved and did not cause much pain (Id./4). [Plaintiff] endorsed fibromyalgia pain, and treatments including physical therapy, and multiple trigger point injections along the thoracic spine with little benefit (Id.). Physical findings by Dr. Heis include normal strength in the bilateral upper extremities, and full range of motion of shoulders and intact sensation in the upper extremities (Id./4). Dr. Heis assessed fibromyalgia, primarily affecting her intrascapular muscles and cervical spine paraspinal muscles (Id.). He prescribed Zanaflex and indicated he wanted to see how [Plaintiff] responded to Savella, a new medication prescribed by her primary care provider (Id./5).

(R. at 24–25).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through June 30, 2018 and has not engaged in substantial gainful activity since April 5, 2016, her alleged onset date of disability. (R. at 18). The ALJ determined that Plaintiff suffered from the severe impairments of a fibromyalgia, disorders of the spine, and disorders of the left shoulder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, meets or medically equal a listed impairment. (R. at 22).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record [the ALJ] finds that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, or crawl. [Plaintiff] is limited to frequent overhead reaching with the left upper extremity.

(R. at 23).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 26).

Relying on the vocational expert ("VE")'s testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a mail clerk. This work does not require the performance of work-related activities precluded by her RFC. (R. at 28–29). She therefore concluded that Plaintiff has not been disabled within the meaning of the Social Security Act, since April 5, 2016. (R. 29).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538

(6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff raises several assignments of error: (1) the ALJ improperly evaluated Plaintiff's fibromyalgia because she required objective medical evidence and failed to conclude the accompanying fatigue prevents sustaining work for forty hours a week; (2) the ALJ erred at step two by failing to label Plaintiff's migraine headaches a severe impairment, and by failing to discuss the frequency, severity and duration of Plaintiff's migraine headaches, which Plaintiff says would result in work-preclusive absenteeism; (3) the ALJ erred in evaluating the medical opinions of the state agency reviewers and Plaintiff's treating physician, Stephen Heis, M.D.; and (4) the ALJ erred in asking improper hypothetical questions to the VE. (Doc. 8 at 3–10). The Commissioner counters that the ALJ carefully reviewed the record and properly assessed all evidence, ultimately adopting an RFC supported by substantial evidence. (Doc. 10).

### A. Fibromyalgia

Plaintiff says the ALJ erred in "requiring objective medical evidence" to support the severity of her fibromyalgia. (Doc. 8 at 3). Similarly, she says that her subjective complaints were not fully evaluated by the ALJ. (*Id.* at 8–10). She maintains that the fatigue associated with her fibromyalgia was severe enough that the ALJ could not have reasonably determined that she was able to sustain full-time employment. (*Id.* at 3). The Commissioner says the ALJ properly supported her finding that though Plaintiff's fibromyalgia was a severe impairment, it did not result in work-preclusive limitations in her RFC. (Doc. 10 at 4–11). Nor was the ALJ prohibited, the Commissioner says, from considering objective medical evidence in determining how Plaintiff's

6

fibromyalgia affected her physical condition and abilities. (*Id.* at 8). The Court agrees that the ALJ followed regulations and her decision was supported by substantial evidence.

At step two of the sequential evaluation, the ALJ found that Plaintiff's fibromyalgia was a severe impairment. (R. at 18). When later discussing Plaintiff's fibromyalgia in relation to her RFC, however, the ALJ noted:

> At the hearing, the [Plaintiff] testified to a number of pain symptoms related to fibromyalgia, spine disorders and disorders of the left shoulder, and it is difficult to determine which of the [Plaintiff]'s symptoms are due to fibromyalgia and which are caused by her other impairments. The undersigned recognizes that fibromyalgia is typically not associated with substantial objective deficits. The undersigned also acknowledges that the [Plaintiff] has at times reported symptoms of pain and reduced range of motion with these impairments; however, the record consistently reports improvement with conservative treatment. The [Plaintiff] has not required any emergency room treatment or surgical interventions for these impairments. She has not required any treatment specific to any joint dislocation. Additionally the record consistently describes normal muscle tone and normal reflexes. There are no objective findings indicating any strength deficits in her extremities or any focal deficits. Such unremarkable findings are inconsistent with the nature of the [Plaintiff]'s allegations and suggest a higher degree of retained vocational ability than alleged.

(R. at 26).

SSR 12-2p requires only that, after a finding that Plaintiff's fibromyalgia was a medically determinable impairment, the ALJ consider fibromyalgia in the remaining steps of the sequential evaluation process.

> SSR 12-2p describes criteria for establishing that a person has a medically determinable impairment [ ] of fibromyalgia , *id.* at *2–3, the sources of evidence the ALJ may look to, *id.* at *3–4, and how a claimant's subjective assertions of pain and functional limitations are evaluated, *id.* at *4. [SSR 12-2p] also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id.* at *5–6. Importantly, ... SSR 12-2p ... merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–99 (6th Cir. 2016). Simply put, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits[.]"

7

*Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (emphasis in original) (citing *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)).  As such, in claims involving fibromyalgia, an ALJ must "decide . . . if the claimant's pain is so severe as to impose limitations rendering her disabled."  *Markesha D. v. Comm'r of Soc. Sec.,* No. 2:21-CV-4515, 2022 WL 1701915 (S.D. Ohio May 27, 2022), report and recommendation adopted, No. 2:21-CV-4515, 2022 WL 4094511 (S.D. Ohio Sept. 7, 2022) (citations omitted).  Contrary to Plaintiff's suggestion that the ALJ erred in her reliance on objective medical evidence, SSR 12-2p requires such consideration.  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) ("[W]e must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.").

The ALJ acknowledged that Plaintiff had a proper diagnosis of fibromyalgia.  (R. at 25) (citing R. at 328) ("In this case, the [Plaintiff]'s physician has diagnosed the [Plaintiff] with fibromyalgia, with the proper tender point findings.").  She further recounted Plaintiff's testimony about her subjective symptoms of fibromyalgia, including "alleged chronic fatigue, [ ] limited exertional ability[,]" "an inability to stand or walk for extended periods due to pain," and "significant problems using her hands and arms, and . . . a number of postural difficulties."  (R. at 26).  Yet, she found that while Plaintiff's medical determinable impairments, including fibromyalgia, "could reasonably be expected to cause some of the alleged symptoms . . . the [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*).

8

First, the ALJ found that "the vast majority of the medical evidence documents rather underwhelming treatment consisting largely of routine primary care with no substantial physical findings suggestive of the need for greater restrictions than outlined [in the RFC]." (R. at 24). Early documentation of pain and related objective findings concerned a left shoulder injury sustained at work in early 2016. (R. at 24) (citing R. at 469). The ALJ explained that the injury resulted in reported pain and reduced range of motion over the course of that year, and Plaintiff was treated with physical therapy and steroid injections. (R. at 24–25). By November 2016, Dr. Heis noted Plaintiff had full strength in her left arm and shoulder, with some range of motion loss and tenderness to palpation. (R. at 25) (citing R. at 353). On a much later return visit to Dr. Heis in August 2020, Plaintiff noted that her shoulder issues had resolved and did not cause her much pain. (R. at 25) (citing R. at 801).

Similarly, later reports of pain were accompanied by largely normal examination findings. In January 2019, Plaintiff saw her primary care provider with complaints of back pain, and when she was examined, the provider noted a decreased range of motion in the cervical and thoracic spine but no neurological deficits, and normal strength and reflexes. (R. at 25) (citing R. at 930, 935). In February 2019, Plaintiff visited an orthopedic practice with complaints of neck and bilateral arm pain. (R. at 25) (citing R. at 356). She denied any weakness in her arms or with fine motor skills and was noted to have 5/5 strength and 2+ reflexes in her upper extremities. (R. at 25) (citing R. at 357). She was noted to have some reduced range of motion in the neck, mild cervical spondylosis on review of imaging, and was prescribed a course of physical therapy for cervical strain. (R. at 25) (citing R. at 357–58). And, in August 2020, she visited Dr. Heis with complaints of pain, which he assessed as "primarily affecting her intrascapular muscles and cervical spine paraspinal muscles." (R. at 25) (citing R. at 801). However, physical findings on

examination demonstrated normal strength, range of motion, and sensation in the upper extremities. (R. at 25) (citing R. at 801).

Moreover, the ALJ noted conservative treatment throughout the record, including physical therapy, steroid injections, and medication management. (R. at 24–25). She further emphasized that Plaintiff reported using for treatment "exercise, hot/cold compresses, massage, hot showers, and ice, preferring to avoid the use of pain medication as much as possible." (R. at 26). Finally, she considered Plaintiff's reported activities of daily living, like preparing meals, attending to household chores, grocery shopping, regularly attending church and singing in the choir, and caring for her two young grandchildren. (R. at 26, 28).

Taken together, this is substantial evidence upon which the ALJ formed her conclusion that Plaintiff's fibromyalgia did not result in work-preclusive exertional limits. Nor did the ALJ violate any regulations by considering objective medical evidence in relation to Plaintiff's functional abilities. On the contrary, that is what the regulations instruct the ALJ to do. *See* SSR 12-2p. At base, Plaintiff wishes that the ALJ had differently credited her subjective complaints about her fatigue associated with fibromyalgia—like her reports that she had to give up caring for her grandchildren, take breaks doing household choirs, and regularly alternate between sitting and standing. (Doc. 8 at 9–10). But the ALJ did not find those complaints fully supported by the evidence of record and sufficiently explained her reasoning with substantial evidence. That ends the Court's inquiry. *See, e.g., Acosta v. Comm'r of Soc. Sec.*, No. 17-12414, 2018 WL 7254256, at *8 (E.D. Mich. Sept. 6, 2018), report and recommendation adopted, No. 17-12414, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019) ("[W]hile plaintiff cites to evidence which she believes supports a different RFC, it is not the Court's role to reweigh the evidence or to determine whether

there is substantial evidence to support a different conclusion."). Plaintiff's allegation of error with respect to fibromyalgia is therefore without merit.

### B. Migraine Headaches

Next, Plaintiff says that the ALJ erred in failing to label her migraine headaches as severe at step two of the sequential evaluation. (Doc. 8 at 6). She further says the ALJ failed to evaluate her migraines fully regarding her RFC. (*Id.*). In particular, she says her testimony that she experienced migraine headaches which lasted two to five days at a time, combined with reports of headaches throughout the medical record, supports a finding that her migraine headaches were work-preclusive. (*Id.* at 6–7). The Commissioner says the ALJ properly considered the evidence of record about headaches, none of which directly supported Plaintiff's testimony that her headaches lasted days at a time and would require work absences. (Doc. 10 at 11–12).

At step two, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The finding of at least one severe impairment at step two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not

11

constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

Plaintiff acknowledges that the labeling of the impairment as non-severe is harmless so long as the ALJ fully evaluated the headaches along with her other impairments. (Doc. 8 at 6). Yet, she says the ALJ failed to complete this evaluation. (*Id.* at 7). The Court disagrees. Regarding Plaintiff's migraine headaches, the ALJ found:

> The record documents complaints of migraine headaches (Exhibit 8F/31, 41). At the hearing, the [Plaintiff] endorsed having migraines twice a week with each lasting 2 to 5 days. She also reported associated nausea and the need to be in a room with a closed door. The treatment record does not support the stated frequency or severity. For example, treatment records do not document neurological deficits associated with migraine headaches (Exhibit 8F/40). At an office visit to establish care, the [Plaintiff] endorsed daily migraine when not taking Topamax (Id./36). Dr. McFawn prescribed Topamax 50 milligrams twice daily and gave dosage information to address active migraines with up to 4 tablets per day (Id./41). Subsequent treatment notes do not report any symptoms similar to those endorsed at the hearing (Id./12, 23), and the [Plaintiff]'s level of activity, including attending/singing in church every week and caring for her grandchildren multiple days per week through February of 2021 seems inconsistent with the severity and limitations due to migraines alleged by the [Plaintiff] at the hearing. Additionally, the record documents that the [Plaintiff] is a smoker (Exhibit 1F/25; 8F/4; 9F/15, 116), and has been counseled to quit or refrain from smoking (Exhibit 9F/56, 58, 80, 105, 121). As indicated in SSR 19-4p, caffeine and the use of over the counter headache remedies that contain caffeine, as well as tobacco use, can be a trigger for headaches.

(R. at 19).

Simply put, the ALJ found that Plaintiff's migraine headaches did not manifest in observable neurological symptoms, were being addressed with medication, and the medical records did not contain reports of disabling symptoms to the extent alleged at the hearing. (*See,*

12

*e.g.,* R. at 861) (describing Plaintiff experiencing "Daily migraine off [T]opamax"); (R. at 866) (diagnosing Plaintiff's migraine headaches as "not intractable" but "uncontrolled off medication" and prescribing Topamax). Further, she found that Plaintiff's activities of daily living and continued use of tobacco undermined her testimony as to the severity of the migraine headaches. In support of her allegation that the ALJ's finding was improper, Plaintiff cites medical records in which she complains generally of experiencing headaches and is prescribed medication to manage them. (Doc. 8 at 6). But none of these records undermine the ALJ's finding that the migraine headaches were an actual impairment, but one that was managed by medication and without limitations as severe as alleged by Plaintiff at the hearing.

Notably, all state agency reviewers, on initial review and reconsideration, though they noted that Plaintiff's claim involved migraine headaches (R. at 60, 69, 78, 85) and undertook a holistic review of the evidence of record, found that Plaintiff had the RFC to perform medium work (R. at 66, 75, 82, 90). In sum, there was no error in the ALJ's decision to not label migraine headaches as severe at step two, because she proceeded to fully evaluate the limitations imposed by the headaches for purposes of the RFC. And her conclusion that the migraine headaches did not support work-preclusive limitations is supported by substantial evidence. Accordingly, Plaintiff's assignment of error is without merit.

### C. Medical Source Opinions

Plaintiff next says the ALJ erred in finding the state agency reviewers "persuasive when they found medium work while she found light work and when they discounted the complaints due to the allegations of pain and limitations being 'more severe than can be objectively supported.'" (Doc. 8 at 7). Plaintiff also notes that the state agency reviewers last considered the medical evidence in September 2020, before all the medical records were submitted. (*Id.*). Finally,

13

Plaintiff says the ALJ erred in rejecting the work-related limitations provided by Stephen Heis, M.D.. (*Id.* at 7–8). In particular, she notes he opined more restrictive limitations regarding how long she could stand and walk, and that she would need extra breaks and to miss at least two days of work a month. (*Id.*). The Commissioner says the ALJ properly evaluated the medical opinions as dictated by the regulations. (Doc. 10 at 12–18).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.[1] 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other

---

[1] The regulations define prior administrative findings:

> A prior administrative finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record . . .

§ 404.1513(a)(2), (5).

evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 416.920c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 416.920c(b)(2).

> Regarding the state agency reviewers, the ALJ found that:
>
> *** Based on their review of the available record, the State consultants opined that [Plaintiff] was capable of a reduced range of medium work, with additional postural limitations. *** The undersigned finds the opinions of the State consultants are consistent with the available record, although additional evidence obtained in preparing the case at the administrative hearing level supports a finding that [Plaintiff]'s physical impairments are more limiting, resulting in a reduced exertional level in the residual functional capacity. Nonetheless, the undersigned emphasizes that these changes do not result in total work preclusion. *** The evidence of record since the State consultant's determination is consistent with their assessment. Accordingly, the undersigned finds the opinions of the State consultants persuasive.

(R. at 27).

Plaintiff seems to argue that it was illogical for the ALJ to find these opinions persuasive and yet adopt a more restrictive RFC; that is, to find a reduced range of light work instead of a reduced range of medium work. However, there is no law binding an ALJ to adopt an opinion in full merely because she finds it persuasive. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267,

15

276 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinion verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (noting that an ALJ "is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."); *Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 2414684, at *5 (S.D. Ohio June 7, 2019) ("Nor, as the case law above makes clear, was the ALJ required to explain why he did not adopt their opinions in full."), *report and recommendation adopted sub nom. Ferguson v. Comm'r of Soc. Sec.*, No. 2:18-CV-1024, 2019 WL 3083112 (S.D. Ohio July 15, 2019).

Moreover, to the extent Plaintiff suggests the ALJ did not build a logical bridge to explain her departure from the state agency reviewers, Plaintiff provides precisely the same reason for departing from the reviewers as did the ALJ in her opinion: the state agency reviewers did not have as much evidence before them as the ALJ did at the administrative hearing stage. (Doc. 8 at 7); (R. at 27). The ALJ explained that the reviewers' opinions were formed properly based on the evidence available to the reviewers at the time—in other words, they were supported. Yet, she concluded that newly available evidence suggested Plaintiff's physical limitations were more limiting—in other words, the opinions were not entirely consistent with the medical record as a whole. The ALJ properly considered the supportability and consistency of the opinions, and though she found them mostly persuasive, made clear how she intended to depart from them in formulating the RFC. And, as was described above regarding Plaintiff's assignments of error about fibromyalgia and migraine headaches, the ALJ's RFC is supported by substantial evidence. Accordingly, Plaintiff's assignment of error with respect to the evaluation of the state agency reviewers' opinions is without merit.

Next, the ALJ found the opinion of treating physician, Stephen Heis, M.D. "not persuasive," noting in relevant part:

> The undersigned also considered the Physical Residual Functional Capacity Assessment completed by Dr. Heis on February 26, 2021 (Exhibit 14F). With respect to [Plaintiff]'s Title II claim, this opinion is not persuasive as it was completed more than two years subsequent to the date last insured, June 30, 2018. In considering this assessment with respect to [Plaintiff]'s Title XVI claim, the undersigned again finds it unpersuasive, as the limitations outlined in the questionnaire are not consistent with the unremarkable physical findings since the date last insured. For example, in August of 2020, [Plaintiff] saw Dr. Heis for fibromyalgia (Exhibit 7F/4). This was her first visit to Dr. Heis in two years, having previously treated her for a shoulder injury under a Worker's Compensation claim (Id.). Physical findings by Dr. Heis at this visit noted normal strength in the bilateral upper extremities with no weakness detected (Id.). He further noted full range of motion in the bilateral shoulders without pain (Id.). Reflexes were 2+ and equal at the facets, triceps, brachioradialis, and pronator teres bilaterally (Id.). Dr. Heis indicated that [Plaintiff]'s fibromyalgia was mainly affecting her intrascapular muscles and cervical paraspinals muscles (Id./5). He prescribed Zanaflex to help with these symptoms and indicated he wanted to see how [Plaintiff]'s symptoms responded to a new medication prescribed by her primary care provider, Savella (Id.). With her conservative treatment and overall benign physical examinations, Dr. Heis' opinion is not persuasive.

(R. at 28).

Dr. Heis opined that Plaintiff had greater functional limitations than the ALJ ultimately adopted, including that Plaintiff was capable of sitting fours in a workday, standing two hours in a workday, would need one to two unscheduled breaks throughout the day, and would be absent from work at least two days per month. (R. at 1217–21). The ALJ declined to adopt the opined limitations, because she found Dr. Heis's opinion not persuasive. Regarding supportability, the ALJ considered Dr. Heis's own objective findings supporting his opinion. In particular, she focused on his visit with Plaintiff in August 2020, which was his only evaluation of Plaintiff outside of his earlier examinations related to her shoulder injury and worker's compensation claim. She noted that Dr. Heis found that fibromyalgia was predominately affecting Plaintiff's intrascapular muscles and cervical paraspinal muscles, but despite this focus of symptoms in the

17

upper body, Plaintiff displayed normal strength, range of motion, and reflexes in her bilateral upper extremities. (R. at 25) (citing R. at 801–02). She further noted that Dr. Heis prescribed medication and wanted to wait to see how that addressed Plaintiff's symptoms. (*Id.*) (citing R. at 802). These benign examination findings and conservative treatment, the ALJ found, did not reasonably support Dr. Heis's conclusions regarding Plaintiff's physical limitations.

Further, regarding consistency, the ALJ found the opinion generally "not consistent with the unremarkable physical findings since the date last insured." (R. at 28). As was described in detail in the fibromyalgia section of this opinion, the ALJ cited to numerous evidence in the record establishing unremarkable physical findings and explained how that evidence—in conjunction with a history of conservative treatment and Plaintiff's activities of daily living—supported the RFC that was ultimately adopted. The ALJ did not find Dr. Heis's more restrictive opined limitations consistent with the evidence. Still more, Dr. Heis's opinion was not consistent with the state agency reviewers, whom the ALJ found persuasive.

At base, the ALJ addressed the supportability and consistency of Dr. Heis's opinion, as dictated by the regulations. And her conclusion that the opinion was not persuasive, as it conflicted both with Dr. Heis's own normal examination findings and those throughout the record, is supported by substantial evidence. Accordingly, Plaintiff's assignment of error regarding the evaluation of Dr. Heis's opinion is without merit.

### D. Vocational Expert Testimony

Finally, Plaintiff says the ALJ asked improper hypothetical questions to the VE "because they left out the extra breaks required due to the headaches and the days missed due to the fibromyalgia and accompanying headaches." (Doc. 8 at 10). This would only be improper if the ALJ had adopted those break and absence limitations into the RFC, which she did not. It appears

18

that Plaintiff raises this error—in a brief and conclusory fashion—only to reiterate her earlier arguments that the ALJ improperly assessed fibromyalgia and migraine headaches and failed to incorporate corresponding limitations into the RFC. The Court has already explained why the ALJ's decisions regarding the RFC were supported by substantial evidence. This assignment of error is without merit.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 8) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.


Date:   March 8, 2023                    /s/ Kimberly A. Jolson
                                         KIMBERLY A. JOLSON
                                         UNITED STATES MAGISTRATE JUDGE